Bueein, Judge.
 

 The allegation in the bill, that the deed of trust was obtained by improper means, is not supported.
 
 Sykes
 
 and
 
 G. Bass
 
 had aright to a counter-security, and the dissipation of the plaintiff about that time, made it an act of but common prudence then to apply for it. The 'Witnesses prove, that although the plaintiff had been in a deep debauch, during which ho had been plundered at the gaming table, he had so far recovered from it, and regained his faculties, as to be capable of understanding the instrument ho executed, which was read and explained to him and understood by him. Then as to the idea of coercion, and that
 
 sort of
 
 
 *295
 
 restraint on bis free will, which we look upon here as a species of duress, I must say, that he was asked to do nothing which he ought not to have done. And it was not unfair in the sureties to inform him, as a motive for him to give the deed, that if he did not voluntarily secure them, they would use such other means as the law afforded for that purpose. They do not seem to liaye done this to alarm a timid man, not aware of his rights and not master of his actions, to gain from him what he would not willingly grant, or they might not rightfully ask; but to have presented the facts to his view as reasonably justifying them in their demand of a security, and as properly inducing him to give it, upon the score of convenience to himself, and justice to them. In fine, the execution of the deed seems to have been voluntary on the part of the plaintiff, and the instrument must be established.
 

 Property convey-' ed to a trustee for sale, and sold by him under an agreement with the vendee, to be jointly interested in the purchase, is subject to the original, trust.
 

 The proceedings under it are viewed by the court very differently. It is dearly in proof, that all the ne-groes sold, have remained in the possession of-
 
 Edwin Bass
 
 ever since the sale, he claiming the ownership in them for himself and others, under the purchase made at his own sale. Two of them were purchased by
 
 Isaac Bass,
 
 under an agreement before the sale, between him and the defendants,
 
 Gideon
 
 and
 
 Edwin,
 
 the trustee, that a purchase should he made of all the slaves for the benefit of the three, and such others of their brethren as chose to come in. This comes precisely within the common rule, that such a purchase by a trustee is void. It is equally so with respect to those who join in the purchase, as with respect to the trustee himself. They have united in an act of fraud and imposition, and all must fare alike. The deposition of
 
 Isaac Bass,
 
 (a party to that agreement,) proves, that
 
 Edwin
 
 has those slaves, as well as the others mentioned in the bill, now in his possession, awaiting the determination of this suit, for -a division among them. As
 
 Edwin
 
 has never conveyed, and the. sale was void, they remain the property of the -plaintiff, liable only as a security for the debts.
 

 The other three slaves are differently situated, which
 
 *296
 
 makes it necessary to advert to other considerations.— r£'|10y wcre at that time, and when the deed was made, the subject of a suit, in which
 
 Hunt
 
 claimed them on one side, and the
 
 Bass
 
 family on the other. It does not appear, how that controversy was determined, or whether it has been determined.
 
 HunthaA
 
 made payments to some of the next of kin of his intestate, but no final settlement had taken place, nor an account current of his administration made. In a very few days after the deed was executed, the trustee, at the request, as he says, of some of the next of kin, of whom he was one, advertised a sale. He gave no notice of it to
 
 Sykes
 
 or to
 
 Hunt,
 
 who heard of it by accident only a day or two before the sale. On the day of sale,
 
 Hunt
 
 urged that he had made payments, and requested a postponement for a few days, when he would consent to a sale at the court-house on a court day. That was refused. He then requested, that an account might be taken, and the sum due from him ascertained. That was also refused, and the negroes first mentioned, were sold and bought in by
 
 Isaac Bass,
 
 for the trustee and himself and others. The trustee was then about to offer the three negroes, of which the title was in dispute, when
 
 Hunt
 
 repeated his entreaty, that the calculations should be made, so as to ascertain whether there was yet a balance owing by him, and if one should be found, that it might be raised out of a tract of land or other property, of which the title was clear. The trustee did not assent to the arrangement, and while
 
 Hunt
 
 and the administrator had retired to compute the debt, those three negroes were offered as being in dispute, and sold at a great undervalue. They were not bought by either Bass, although their agreement extended to them, but were purchased, much to their displeasure, by a Mr.
 
 Moore,
 
 who in a day or two transferred his purchase to
 
 Edwin Bass,
 
 the trustee, and he now holds them, as he does the others, for the joint benefit of himself and his brothers.
 

 A trustee for sale, should be indifferent between the debtor and
 
 *297
 
 tor> ancl. should gar,i 0f the inter' est of the former, agreed.
 

 
 *296
 
 A sale thus conducted, cannot be supported in this coalq_ A trustee to sell, should stand indifferent between the debtor and creditor; he is charged
 
 with the
 
 
 *297
 
 interests of both, and should take reasonable care of them. "Where there is no absolute necessity for an immediate sale, it is a breach of his duty to bring it on at a disadvantage, unless it was in the contemplation of all the parties to sell at all events, subject to the cloud on the title. And certainly when there is other property with a clear title, that which is in dispute ought not to he sold until the other has been exhausted, especially against the expressed will of the owner. But the circumstances in. this case, do not only shew a total disregard on the part of the trustee, of the interests of the debtor, but conclusively prove a design to oppress and ruin him, for the sake of gain to himself and his associates. The time of the sale, without an intimation of it to Hunt; the refusal to postpone it even until he could ascertain the sum to beraised; the refusal to sell the land instead of the negroes, although importunately urged to do so by
 
 Hunt
 
 and his friends; and the previous agreement to have all the negroes purchased on the joint account of himself and his brothers, and thereby extinguish the claim of
 
 Hunt,
 
 which they were then contesting at law; all mark the purpose to sacrifice the unfortunate niau, who had reposed a misplaced confidence in him.
 

 ifthe title of some pertye¡s disputed, heshouhlnotsell is exhausted,
 

 ^ ¿jebt0I has aright to the improperly sold ^mes to his hands, or frates heven”if originally sold to behadnTrightw relief,
 

 Such conduct amounts to a flagrant breach of trust, and subjects the trustee to the payment of the full value of the property sold, and in that way,
 
 Edwin Bass
 
 would be charged here if necessary; and
 
 Gideon
 
 also, who participated throughout with him in conducting the sale and gaining an interest under it. But as the slaves have been given up by
 
 Moore,
 
 and got back to the hands that have done the wrong, the - plaintiff has a right to them specifically. These parties cannot protect themselves under the purchase of
 
 Moore,
 
 ev,en if it were con-stimulated, which is doubtful. When the property comes hack to them, they cannot say they ever parted from it, since the disposition was an act of the most aggravated wrong. As to them, the sale was absolutely void.
 

 The plaintiff1 is, therefore, entitled to have an account taken of the debts secured by the deed, and a credit for the full value of the property sold other than the negroes,
 
 *298
 
 and also for the hire of the negroes, and to have a re-, conveyance, upon the payment of the balance that may be found due.
 

 Per Curiam. — Direct an account.